## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICHARD SCARANTINO, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>  v.<br><br>ILG, INC., CRAIG M. NASH, DAVID FLOWERS, VICKI L. FREED, LIZANNE GALBREATH, CHAD HOLLINGSWORTH, LEWIS J. KORMAN, THOMAS J. KUHN, THOMAS J. MCINERNEY, THOMAS P. MURPHY JR., STEPHEN R. QUAZZO, SERGIO D. RIVERA, THOMAS O. RYDER, AVY H. STEIN, MARRIOTT VACATIONS WORLDWIDE CORPORATION, IGNITE HOLDCO, INC., IGNITE HOLDCO SUBSIDIARY, INC., VOLT MERGER SUB, INC., AND VOLT MERGER SUB, LLC,<br><br>        Defendants. | Case No. _____<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on April 30, 2018 (the "Proposed Transaction"), pursuant to which ILG, Inc. ("ILG" or the "Company") will be acquired by Marriott Vacations Worldwide Corporation ("Marriott") and its affiliates.

2. On April 30, 2018, ILG's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Marriott, Ignite Holdco, Inc., Ignite Holdco Subsidiary, Inc., Volt Merger Sub,

Inc., and Volt Merger Sub, LLC (collectively, the "Buyers"). Pursuant to the terms of the Merger Agreement, ILG's stockholders will receive $14.75 in cash and 0.165 shares of Marriott common stock for each share of ILG common stock they hold.

3. On June 7, 2018, defendants filed a registration statement with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction (the "Registration Statement").

4. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of ILG common stock.

9. Defendant ILG is a Delaware corporation and maintains its principal executive offices at 6262 Sunset Drive, Miami, Florida 33143. ILG's common stock is traded on the NasdaqGS under the ticker symbol "ILG."

10. Defendant Craig M. Nash ("Nash") has served as Chairman of the Board, President, and Chief Executive Officer ("CEO") of ILG since 2008.

11. Defendant David Flowers ("Flowers") has served as a director of ILG since 2008.

12. Defendant Vicki L. Freed ("Freed") has served as a director of ILG since 2012.

13. Defendant Lizanne Galbreath ("Galbreath") has served as a director of ILG since 2016.

14. Defendant Chad Hollingsworth ("Hollingsworth") has served as a director of ILG since 2015.

15. Defendant Lewis J. Korman ("Korman") has served as a director of ILG since 2008.

16. Defendant Thomas J. Kuhn ("Kuhn") has served as a director of ILG since 2008.

17. Defendant Thomas J. McInerny ("McInerny") has served as a director of ILG since 2008.

18. Defendant Thomas P. Murphy Jr. ("Murphy") has served as a director of ILG since 2008.

19. Defendant Stephen R. Quazzo ("Quazzo") has served as a director of ILG since 2016.

20. Defendant Sergio D. Rivera ("Rivera") has served as a director of ILG since 2016.

21. Defendant Thomas O. Ryder ("Ryder") has served as a director of ILG since 2016.

22. Defendant Avy H. Stein ("Stein") has served as a director of ILG since 2008.

23. The defendants identified in paragraphs 10 through 22 are collectively referred to

herein as the "Individual Defendants."

24. Defendant Marriott is a Delaware corporation and a party to the Merger Agreement.

25. Defendant Ignite Holdco, Inc. is a Delaware corporation and a party to the Merger Agreement.

26. Defendant Ignite Holdco Subsidiary, Inc. is a Delaware corporation and a party to the Merger Agreement.

27. Defendant Volt Merger Sub, Inc. is a Delaware corporation and a party to the Merger Agreement.

28. Defendant Volt Merger Sub, LLC is a Delaware limited liability company and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

29. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of ILG (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

30. This action is properly maintainable as a class action.

31. The Class is so numerous that joinder of all members is impracticable. As of April 27, 2018, there were 26,565,085 shares of ILG common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

32. Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act and whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

33. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other

members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

34. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

35. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

36. ILG is a leading provider of professionally delivered vacation experiences and the exclusive global licensee for the Hyatt®, Sheraton®, and Westin® brands in vacation ownership.

37. The Company offers its owners, members, and guests access to an array of benefits and services, as well as world-class destinations through its international portfolio of resorts and clubs.

38. ILG's operating businesses include Aqua-Aston Hospitality, Hyatt Vacation Ownership, Interval International, Trading Places International, Vacation Resorts International, VRI Europe, and Vistana Signature Experiences.

39. Through its subsidiaries, ILG independently owns and manages the Hyatt Residence Club program and uses the Hyatt Vacation Ownership name and other Hyatt marks

under license from affiliates of Hyatt Hotels Corporation.

40. In addition, ILG's Vistana Signature Experiences, Inc. is the exclusive provider of vacation ownership for the Sheraton and Westin brands and uses related trademarks under license from Starwood Hotels & Resorts Worldwide, LLC.

41. ILG has offices in fifteen countries and more than 10,000 associates.

42. On April 30, 2018, the Individual Defendants caused the Company to enter into the Merger Agreement.

43. Pursuant to the terms of the Merger Agreement, ILG's stockholders will receive $14.75 in cash and 0.165 shares of Marriott common stock for each share of ILG common stock they hold.

44. According to the press release announcing the Proposed Transaction:

> Marriott Vacations Worldwide Corporation (NYSE: VAC) ("MVW" or the "Company") and ILG (Nasdaq: ILG) today announced that they have entered into a definitive agreement under which MVW will acquire all of the outstanding shares of ILG in a cash and stock transaction with an implied equity value of approximately $4.7 billion. Under the terms of the agreement, ILG shareholders will receive $14.75 in cash and 0.165 shares of MVW common stock for each ILG share.
>
> ILG is a leading provider of premier vacation experiences with over 40 properties and over 250,000 owners in its Vistana Signature Experiences and Hyatt Vacation Ownership portfolios, as well as exchange networks that comprise nearly two million members and over 3,200 resorts worldwide. As a combined entity, MVW and ILG will be a leader in the vacation experiences industry with significant scale, an expanded presence in key leisure destinations, the largest portfolio of upper-upscale and luxury brands in the industry and world-class exchange networks. The combined company will be the global licensee of seven upper-upscale and luxury vacation brands, including Marriott Vacation Club, Grand Residences by Marriott, Ritz-Carlton Destination Club, Sheraton Vacation Club, Westin Vacation Club, St. Regis Residence Club, and Hyatt Residence Club. It will also have exclusive access for vacation ownership to the Marriott Rewards, Starwood Preferred Guest and Ritz-Carlton Rewards loyalty programs for its six Marriott vacation ownership brands. With respect to its Hyatt business, the combined company will have rights to develop, market and sell under the Hyatt Vacation Ownership programs, including access to the almost 10 million members of the World of Hyatt loyalty

platform. Finally, strengthening MVW's vacation properties' affiliation with ILG's exchange networks will reinforce Interval International's industry leading position and advance our objective of creating shareholder value. . . .

Integration Planning and Leadership

Marriott Vacations Worldwide's President and Chief Executive Officer, Mr. Stephen Weisz, and its Chief Financial and Administrative Officer, Mr. John Geller, will continue to serve in their roles following the close of the transaction. The Marriott Vacations Worldwide Board of Directors will be expanded from eight to 10 members to include two current members of the ILG Board, and Mr. William Shaw will remain Chairman of the Board. MVW's headquarters will remain in Orlando, and the combined company will maintain a significant operating presence in Miami.

Following the close of the transaction, the combined company will trade on the NYSE under ticker symbol VAC.

Transaction Details

Under the terms of the merger agreement, which has been unanimously approved by the Boards of both companies, ILG shareholders will receive $14.75 in cash and 0.165 shares of MVW common stock for each ILG share. Following the close of the transaction, ILG shareholders will own approximately 43% of MVW's common shares on a fully-diluted basis, based on the number of MVW common shares outstanding today. Qurate Retail, Inc. has entered into a voting agreement with ILG in support of the transaction.

MVW has received financing commitments from J.P. Morgan and BofA Merrill Lynch. The completion of the transaction is not subject to a financing contingency.

Approvals

The transaction, which is expected to close in the second half of 2018, is subject to the satisfaction of customary closing conditions, including regulatory approvals and approval by shareholders of both companies.

**The Registration Statement Omits Material Information**

45.     Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction. As set forth below, the Registration Statement omits material information with respect to the Proposed Transaction.

46.     The Registration Statement omits material information regarding the Company's,

7

Marriott's, and the combined company's financial projections as well as the analyses performed by the Company's financial advisors in connection with the Proposed Transaction, Goldman Sachs & Co. LLC ("Goldman") and Moelis & Company LLC ("Moelis").

47.     With respect to the financial projections for ILG, the Registration Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) all line items used to calculate Adjusted EBITDA; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

48.     With respect to the financial projections for Marriott, the Registration Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) all line items used to calculate Adjusted EBITDA; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

49.     With respect to the financial projections for the combined company, the Registration Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) all line items used to calculate Adjusted EBITDA; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

50.     With respect to Goldman's *Illustrative Discounted Cash Flow Analysis—ILG Standalone*, the Registration Statement fails to disclose: (i) the range of illustrative terminal values for ILG; (ii) the total number of fully diluted outstanding shares of ILG; and (iii) the specific inputs and assumptions underlying the discount rates ranging from 9.5% to 11.0% and the perpetuity growth rates ranging from 2.0% to 3.0%.

51.     With respect to Goldman's *Illustrative Discounted Cash Flow Analysis—Pro Forma Combined Company; Implied Premium*, the Registration Statement fails to disclose: (i) the range of illustrative terminal values for the pro forma combined company; (ii) the total number of fully diluted outstanding shares of the pro forma combined company; and (iii) the specific inputs and assumptions underlying the discount rates ranging from 10.0% to 11.5% and the perpetuity

growth rates ranging from 2.0% to 3.0%.

52. With respect to Goldman's *Illustrative Present Value of Future Stock Price Analysis—ILG Standalone*, the Registration Statement fails to disclose: (i) the estimate of ILG's future net debt; (ii) the projected total number of fully diluted shares of ILG estimated to be outstanding; and (iii) the specific inputs and assumptions underlying the illustrative discount rate of 11.4%.

53. With respect to Goldman's *Illustrative Present Value of Future Stock Price Analysis—Pro Forma Combined Company; Implied Premium*, the Registration Statement fails to disclose: (i) the estimate of the pro forma combined company's future net debt; (ii) the projected total number of fully diluted shares of the pro forma combined company estimated to be outstanding; and (iii) the specific inputs and assumptions underlying the illustrative discount rate of 12.0%.

54. With respect to Goldman's *Premia Paid Analysis*, the Registration Statement fails to disclose the transactions observed by Goldman in the analysis as well as the premiums paid in such transactions.

55. With respect to Moelis's *Discounted Cash Flow Analysis* of ILG, the Registration Statement fails to disclose: (i) ILG's management's estimated cash tax rates; (ii) the range of estimated terminal values; (iii) the diluted share information used by Moelis in the analysis; and (iv) the specific inputs and assumptions underlying the range of discount rates of 9.50% to 11.0% and the perpetuity growth rate ranges of 1.1% to 3.7%.

56. With respect to Moelis's *Discounted Cash Flow Analysis* of Marriott, the Registration Statement fails to disclose: (i) Marriott's management's estimated cash tax rates; (ii) the range of estimated terminal values; (iii) the diluted share information used by Moelis in the

analysis; and (iv) the specific inputs and assumptions underlying the range of discount rates of 9.50% to 11.0% and the perpetuity growth rate ranges of 1.8% to 4.2%.

57. With respect to Moelis's *Pro Forma Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the diluted share information used by Moelis in the analysis.

58. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

59. The Registration Statement also omits material information regarding potential conflicts of interest of the Company's financial advisors.

60. The Registration Statement fails to disclose whether Moelis has performed services for Marriott or its affiliates in the past two years, as well as the nature of such services and the amount of compensation Moelis received for providing such services.

61. Further, the Registration Statement fails to disclose whether Goldman has performed services for ILG's or Marriott's affiliates in the past two years, as well as the nature of such services and the amount of compensation Goldman received for providing such services.

62. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

63. The omission of the above-referenced material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) Background of the Combination Transactions; (ii) ILG's Reasons for the Combination Transactions; Recommendation of ILG's Board; (iii) Opinions of ILG's Financial Advisors; (iv) Certain ILG Financial Forecasts; and (v) Certain Prospective Financial Information Used by MVW.

64. The omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and ILG

65. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

66. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. ILG is liable as the issuer of these statements.

67. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

68. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

69. The omissions and false and misleading statements in the Registration Statement

are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

70. The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

71. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

72. Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and the Buyers

73. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

74. The Individual Defendants and the Buyers acted as controlling persons of ILG within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of ILG and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

75. Each of the Individual Defendants and the Buyers was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of

the statements or cause them to be corrected.

76. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

77. The Buyers also had direct supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

78. By virtue of the foregoing, the Individual Defendants and the Buyers violated Section 20(a) of the 1934 Act.

79. As set forth above, the Individual Defendants and the Buyers had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and

setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to file a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: July 6, 2018

**RIGRODSKY & LONG, P.A.**

By: */s/ Brian D. Long*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com